

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**FREDRICK D. JOINER**                                                         **PLAINTIFF**

V.                                                  CIVIL ACTION NO.: 3:14cv695 HTW-LRA

**SOUTHERN COMPANY SERVICES, INC.**                         **DEFENDANT**

## COMPLAINT
## JURY TRIAL DEMANDED

**COMES NOW** the Plaintiff, Fredrick D. Joiner, by and through his counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of his rights under, Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, against Defendant, Southern Company Services, Inc. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### PARTIES

1. Plaintiff, Fredrick D. Joiner, is an adult African American male resident of Gwinnett County, Georgia, residing at 2300 Country Walk, Snellville, Georgia 30039.

2. Defendant, Southern Company Services, Inc., is an Alabama Corporation licensed to do business in the State of Mississippi. Defendant may be served with process through its Registered Agent: Corporation Service Company, 506 President Street, Jackson, Mississippi 39201.

### JURISDICTION AND VENUE

3. This court has civil rights and federal question jurisdiction for a cause of action arising under Title VII of the Civil Rights Act of 1964.

4. This Court has personal and subject matter jurisdiction over the Defendant and venue is proper in this Court.

5. Plaintiff timely filed a Charge of Discrimination with the EEOC, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on June 11, 2014, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of his Notice of Right to Sue.

## STATEMENT OF THE FACTS

6. Plaintiff began working for the Defendant at Plant Red Hills in March of 2013, as a Safety Specialist II. Plaintiff transferred to Plant Gaston from Plant Barry where he was a Security Officer I.

7. Plaintiff went to his Compliance Manager, Ms. Kroh, on several occasions asking for training opportunities. Plaintiff asked Ms. Kroh if he could shadow other safety specialist and her response was, "you don't have time for that right now, your obligations are here at Red Hills." It is the responsibility of a manager and the employee to seek out training opportunities to enhance the knowledge, skills, and abilities of their job positions. On two separate occasions, Chuck Lane, the Defendant's Safety and Health Manager, and Andre' Marvray, the Defendant's Safety and Health Coordinator, both offered to come out to Plaintiff's plant to give an assessment of safety deficiencies and to help guide Plaintiff in the right direction as the new incoming Safety Specialist. Ms. Kroh's reply was, "I don't need them to come out and do an assessment/training, because we already know that we have." Plaintiff took it upon himself before starting at Plant Red Hills on his days off to visit with the Defendant's Corporate Safety and Health team to get some guidance. Plaintiff drove from Ackerman, Mississippi, to Birmingham, Alabama, to sit down with a safety specialist from his

former plant, along with Chuck Lane and Andre' Marvray, for guidance to point him in the right direction to succeed as a Safety Specialist.

8. In April of 2013, Chuck Lane, by phone, and Andre' Marvray present at the plant one day, extended an offer again to Ms. Kroh to come out and help get the plant on track from a safety aspect and she declined their offer again. Both gentleman are safety professionals with over 25 years of experience with the Defendant. Instead, Plaintiff was assigned to Steve McVay, who is the Safety and Health Manager for Alabama Power Company, for corporate support; however, Mr. McVay was rarely accessible by phone and would not respond to any of Plaintiff's phone calls. Plaintiff spoke to his plant manager, Keith Cuevas, stating that Mr. McVay was not giving him any support, and Mr. Cuevas's response was "just work with what you've got." This became a problem for Plaintiff because he has always succeeded in his job and Plaintiff knows that training is the key to success.

9. Plaintiff began to see that he was being railroaded. It became very obvious that Ms. Kroh and Mr. Cuevas did not want Plaintiff to succeed as a Safety Specialist. Caucasion co-workers of Plaintiff were sent to training sessions for several days and even a week around the company system so that they could succeed in their new roles with the plant. Plaintiff was approached several times by Caucasian colleagues and told that he was catching hell because he was black. Also, Plaintiff was told that Ms. Kroh told them not to share any information with Plaintiff and if anyone contacted Plaintiff they would be terminated. Plaintiff was told by one of the maintenance team leaders "you just hang in there and keep walking on egg shells a little while longer and Ms. Kroh will be gone."

10. Ms. Kroh began blaming Plaintiff for alleged incomplete projects and not meeting deadlines. She developed an attitude towards Plaintiff and expressed how angry she was with

Plaintiff's job performance. This hostile work environment went on for months making it hard for Plaintiff to perform his job. When Plaintiff would ask Ms. Kroh if he could speak to her, she would reply saying "not now, I am busy, I have a lot of other people to manage." The Defendants held two separate Safety Risk Assessments and Plaintiff was not informed of either of them. Both were held across the street from Plant Red Hills at the coal mine for the purpose of not including Plaintiff. Plaintiff learned of these assessments after he found a pamphlet on the copier. Several of Plaintiff's co-workers came to him and asked him why he was not there. Plaintiff's position at Plant Red Hills was the Safety Manager.

11. One day while Plaintiff was in the chemistry lab, Eric Hattox, Compliance Team Leader, walked in and threw a 2 inch roll of black electrical tape at Plaintiff striking him in the chest. Chris Honeycutt and Tracy Crayton were standing there with Plaintiff when this incident happened. Chris Honeycutt reported the incident to Ms. Kroh and she told him she would talk to Mr. Hattox and tell him to make it right. However, when Plaintiff reported the incident to Ms. Kroh, she told Plaintiff "I don't want to hear about it." Ms. Kroh just swept the incident under the rug and no disciplinary action was taken against Eric Hattox.

12. On August 21, 2013, Plaintiff was written up by Ms. Kroh on a Level I Discipline for Safety/Conduct and Work Performance. On September 3, 2013, Ms. Kroh brought the Level I Discipline for Plaintiff to sign. Plaintiff signed it but also wrote on it that he disagreed with it.

13. On August 23, 2013, Plaintiff filed an complaint with the EEOC.

14. On September 9, 2013, Mr. Cuevas pulled Plaintiff outside and stated "I see where you have filed and EEOC charge against us." Plaintiff replied "yes sir, I surely did." Mr. Cuevas then replied to Plaintiff, "I am not happy about it and I am very surprised." Now Plaintiff was clearly

a target for retaliation and discrimination and his work environment became even more hostile.

15. On September 10, 2013, Plaintiff was written up on a Level II Discipline for Safety/Conduct and Work Performance. Ronnie Pursley, Operations Manager, told Plaintiff several times to "document everything because it is not right with what they are doing to you."

16. On October 17, 2013, Plaintiff was terminated. It was very ironic that Ms. Kruh went home early.

17. In contrast, Plaintiff's 2012 Job Performance Summary at the Gaston Plant, Plaintiff's supervisor wrote that Plaintiff completes job tasks with little assistance, works overtime as needed, has met and exceeded all requirements of a security officer, dependable, and courteous and respectful to fellow employees and visitors at the Plant.

18. As such, Defendant has unlawfully discriminated against Plaintiff because of his race and has unlawfully retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended.

## CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, AND 42 U.S.C. § 1981 - RACE DISCRIMINATION

19. Plaintiff incorporates the above paragraphs 1 through 18 as though specifically set forth herein and alleges as follows:

20. Plaintiff has been discriminated against in the terms and conditions of his employment on the basis of his race.

21. Plaintiff has suffered an adverse employment action as a result of the Defendant's racially discriminatory treatment of Plaintiff.

22. Plaintiff has been harmed as a result of the Defendant's discrimination, and the

Defendant is liable to the Plaintiff for the same.

## COUNT TWO: VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, AND 42 U.S.C. § 1981 - RETALIATION

23. Plaintiff incorporates the above paragraphs 1 through 22 as though specifically set forth herein and alleges as follows:

24. By its actions, Defendant has unlawfully retaliated against Plaintiff after Plaintiff filed a charge of discrimination with the EEOC.

25. As a direct and proximate result of the acts and omissions of Defendant described above, Plaintiff has suffered lost wages and benefits and other pecuniary loss as well as emotional pain, humiliation, anxiety, and emotional distress.

26. Plaintiff is allowed to recover all lost wages, salary, employment benefits or other compensation denied to him as well as actual monetary losses sustained by Plaintiff as a result of the violation and unlawful retaliation.

27. Plaintiff is further entitled to interest on the amounts owed to him as well as compensatory and punitive damages.

28. Plaintiff is further entitled to such equitable relief as may be appropriate, including employment and reinstatement to the same or equivalent position.

29. Plaintiff further requests that the Court award a reasonable attorney's fee, reasonable expert fee, and other costs of the action to be paid for by the Defendant.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

    1. Reinstatement or front pay in lieu of reinstatement;
    2. Back pay;
    3. Compensatory damages;

        4.       Punitive Damages;
        5.       Attorney's fees;
        6.       Costs and expenses; and
        7.       Any other relief to which he may be properly entitled.

THIS the 5th day of September, 2014.

                          Respectfully submitted,

                          FREDRICK D. JOINER, PLAINTIFF

                          By: _____
                          Louis H. Watson, Jr.  (MB# 9053)
                          Nick Norris (MB#101574)
                          Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216
Telephone: (601) 968-0000
Facsimile:  (601) 968-0010
Email: louis@watsonnorris.com